IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESTATE OF PENIAMINA TOAILOA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES CLARK and VALLEY TRANSPORTATION SERVICE, INC.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:24-cv-00023-JNP-JCB<br><br>Chief District Judge Jill N. Parrish<br>Magistrate Judge Jared C. Bennett |

Before this court is the Defendants' motion for summary judgment on Plaintiff's complaint. Dkt. No. 55. For the following reasons, the motion is DENIED.

## BACKGROUND

On the morning of November 9, 2022, Charles Clark was driving a 2022 Peterbilt 389 pulling a flat-bed trailer loaded with a feed mixer in Lane 2 of northbound I-15 near Woods Cross, Utah.[1] Dkt. No. 55, pp. 1–2. The feed mixer was heavy and wide, so Mr. Clark was operating under a UDOT permit for an oversized load. Dkt. No. 57, p. 19. Mr. Clark reports that, around 9:45 am, a Nissan Altima lost control and entered Lane 2. Dkt. No. 55, p. 2. Mr. Clark applied his brakes and downshifted but was unable to avoid hitting the Altima. *Id.* Mr. Toailoa, a passenger in the Altima, died twenty-four days later. *Id.* at 2.

[1] The parties refer to the far-left lane as the HOV lane; the lane to the right of that is Lane 1; the next lane to the right is Lane 2. Dkt. No. 55, p. 2. The section of I-15 in which the accident occurred had six total lanes, including the HOV lane, in November 2022. *Id.*

Kim Crandal was traveling north on I-15 behind Mr. Clark's Peterbilt. *Id.* at 5. She confirms that Mr. Clark was in Lane 2. Dkt. No. 55-4, pp. 17–18.[2] Ms. Crandal and Mr. Clark report that the Altima approached from behind in either the HOV lane or Lane 1. Dkt. No. 55, pp. 4–5. Mr. Clark saw the Altima swerve, brake, hit the concrete barrier at the center of I-15, bounce off the barrier, and cross into Lane 2. *Id.* at 4. Ms. Crandal did not see the Altima hit the barrier but saw it pass the Peterbilt while going sideways (i.e., while the Altima was perpendicular to the flow of traffic). Dkt. No. 55-4, pp. 29–31.

Ms. Crandal reports that she and Mr. Clark were traveling at between 65 and 68 mph prior to the accident. *Id.* at 21. Mr. Clark reports that he was traveling at 63 mph before applying the brakes. Dkt. No. 55-3, p. 30. The parties appear to agree that Mr. Clark was traveling at 53–54 mph when his Peterbilt hit the Altima. Dkt. No. 57, p. 16.

Plaintiff presents photographic evidence that slush had accumulated on at least part of I-15 at the time of the accident. *Id.* at 7. Defendants agree that it was raining at the time of the accident but dispute the suggestion that water spray on the highway degraded visibility. Dkt. No. 58, p. 2.

Senosa Pauga, the driver of the Altima, offers a very different account of the accident. Mr. Pauga reports that he was driving at 45 mph prior to the accident. Dkt. No. 55-5, pp. 14–15. Mr. Pauga further reports that he was not travelling in the HOV lane; that Mr. Clark's Peterbilt pulled in behind him in his lane and stayed there for 30 minutes; that Mr. Clark followed Mr. Pauga when he moved one lane to the left; and that Mr. Clark's Peterbilt hit the back of the Altima, causing the accident. *Id.* at 16–20.

---

[2] For consistency, the court uses the page numbers assigned by the CM/ECF system.

Trooper Dawson Durrant, who responded to the accident on behalf of the Utah Highway Patrol, issued Mr. Pauga a citation for driving too fast for the existing conditions. Dkt. No. 55-6, pp. 30–31. Trooper Durrant testified that the damage to the rear end of the Altima did not "look like a rear impact." *Id.* at 45. Defendants' expert Neal Carter also testified that "when we look at the photographs of the Nissan, we don't see any damage that's consistent with the rear-end impact." Dkt. No. 55-9, p. 30.

Defendants' motion for summary judgment presents a "Statement of Undisputed Material Facts" that includes several seemingly disputed facts, including factual allegations from Mr. Pauga's testimony that are inconsistent with both Defendants' position and Plaintiff's position. *See* Dkt. No. 55, pp. 4–11; Dkt. No. 57, pp. 8–17. For example, as Plaintiff notes, Defendants present as undisputed fact Mr. Pauga's testimony that he was driving 45 mph at the time of the accident, even though both parties' experts opine that Mr. Pauga was going 70 mph at that time. Dkt. No. 57, p. 8. Because Plaintiff's response shows that material facts are still in dispute between the parties such that summary judgment is not appropriate, the court need not resolve this confusion.

## LEGAL STANDARD

The court must grant summary judgment on a claim or part of a claim when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court must always view the facts "in the light most favorable to the non-moving party[,] draw[ing] all reasonable inferences in [its] favor." *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015).

Initially, "[t]he movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant does not bear the burden of persuasion at trial, it may satisfy its burden "simply by pointing out . . . a lack of evidence for

the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Then, the nonmovant must "'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.*

**DISCUSSION**

## I. TESTIMONY OF MR. PAUGA

"[A] judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment."[3] *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000). Here, it appears that neither party adopts Mr. Pauga's account of the accident, which exonerates his own driving but is wholly inconsistent with all other evidence in the record. Dkt. No. 57, pp. 8–10. Mr. Pauga could not have been traveling 20 mph slower than Mr. Clark and Ms. Crandal while catching up to them from behind. Mr. Pauga's claim that he was rear-ended by Mr. Clark's Peterbilt is inconsistent with testimony by Mr. Clark and Ms. Crandal, Trooper Durrant's report, and the physical evidence found on the Altima. As neither party adopts Mr. Pauga's narrative of the accident, and his narrative is inconsistent with both parties' factual allegations, the court's analysis focuses on material facts disputed between Plaintiff and Defendants.

---

[3] Defendants argue that the "Supreme Court has recognized that 'where documents or objective evidence contradicts a witness' story or the story itself is so internally inconsistent or implausible on its face that [a] reasonable fact finder would not credit it,' a court may find no genuine issue exists," citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564 (1985). Dkt. No. 55, p. 14. The court notes that the quoted language appears in a West Headnote for *Anderson*, not the Supreme Court's opinion in *Anderson*. More troubling is the fact that, in *Anderson*, the District Court had held a two-day trial and made formal findings of fact and conclusions of law based on that trial. *Anderson*, at 568. The Supreme Court was therefore applying Rule 52(a), which governs appellate review of a district court's findings of fact after a trial. *Id.* at 573. Rule 56(a) sets forth the standard for summary judgment prior to trial. FED. R. CIV. P. 56(a).

## II. NEGLIGENT DRIVING

Plaintiff's first claim is for negligence in operating the Peterbilt and is brought against all defendants. Dkt. No. 1-1, p. 3. Plaintiff claims that Mr. Clark had a duty to exercise reasonable care in operating the Peterbilt and breached that duty by not maintaining a proper lookout; failing to adequately control the Peterbilt; operating the Peterbilt in excess of the speed limit; traveling too fast for road conditions; failing to follow the rules of the road and controlling traffic laws; and failing to act with reasonable care as required under the circumstances. *Id*. at 3–4. Plaintiff further alleges that Valley Transportation Service is liable for Mr. Clark's negligence under the doctrine of *respondeat superior*. *Id*. at 4.

In Utah, a plaintiff bringing a negligence claim must show "a duty, breach of that duty, causation, and damages." *McCartney v. United States*, 31 F. Supp. 3d 1340, 1343 (D. Utah 2014). "A long-established principle of Utah law is that negligence is a question of fact for the jury, and summary judgment on a negligence claim shall be granted only in the clearest of circumstances." *Creech v. Stryker Corp.*, No. 2:07-CV-22-DAK, 2012 WL 33360, at *4 (D. Utah Jan. 6, 2012). "The Utah Supreme Court has defined negligence as 'a failure to exercise the degree of care which a reasonable person would have exercised under the same circumstances, whether by acting or by failing to act.'" *Id*. (citation omitted).

1) Breach of a duty

Defendants first argue that no rational fact finder could conclude that Mr. Clark was negligent because Mr. Clark was not driving too quickly. Dkt. No. 55, p. 12. Defendants note that Trooper Durrant did not issue a citation to Mr. Clark for excessive speed but did issue one to Mr. Pauga. *Id*. They also emphasize that Valley Transportation Service's Safety Director, Karsen Ulwelling, testified that the Peterbilt was "governed at 70 mph," meaning that it could not go faster

than 70 mph, the speed limit in the relevant section of I-15. *Id*. at 12. Defendants also assert that Mr. Clark was "traveling approximately 53–60 mph before impact." *Id*. at 13. But, as Plaintiff notes, Defendants have not established a specific speed at which Mr. Clark was traveling prior to the Altima losing control. Dkt. No. 57, p. 10. Mr. Clark himself told Trooper Durrant that he was traveling at 63 mph leading up to the accident. *Id*.

This dispute is material to Plaintiff's negligence claim. Defendants assume that Mr. Clark could not have been negligent because he was obeying the speed limit and did not receive a citation for excessive speed. However, Plaintiff has provided competent evidence from which a jury could nonetheless find Mr. Clark negligent. First, Plaintiff cites 49 C.F.R. § 392.14, which provides that "[e]xtreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction," and "[s]peed shall be reduced when such conditions exist." 49 C.F.R. § 392.14. Plaintiff has provided evidence that there was slush on at least part of I-15, and Defendants have conceded that fact. Dkt. No. 58, p. 6. Though failure to adhere to § 392.14 might not be conclusive evidence of negligence, a rational finder of fact could find that, under the circumstances, Mr. Clark negligently failed to reduce his speed as required by § 392.14.

Plaintiff also cites V. Paul Herbert's expert report, which indicates that Commercial Driver's License training instructs drivers to reduce their speed by one-third on wet roadways. Dkt. No. 57-1, p. 36. Mr. Clark's own testimony, and his report to Trooper Durrant at the scene, indicate that he was traveling at more than two-thirds of the speed limit when the Altima lost control. Dkt. No. 57, p. 10; Dkt. No. 55-3, p. 30. Again, failing to comply with a particular training course may not be dispositive evidence of negligence. But, given the evidence offered by the Defendants and

Plaintiff regarding conditions on I-15 at the time of the accident, a rational jury could conclude that Mr. Clark was negligent in driving too quickly for prevailing conditions.

Second, Defendants argue that Mr. Clark's following distance to the Altima was irrelevant, as the accident was a T-bone collision. Dkt. No. 55, p. 13. Defendants claim that "following-distance concepts do not govern a perpendicular, sudden incursion from a vehicle in another lane." Dkt. No. 55, p. 13. However, Mr. Herbert has opined that a reasonably prudent professional driver would have anticipated that "vehicles in adjacent lanes could hydroplane or suddenly change position on the wet roadway." Dkt. No. 57-1, p. 34. A rational jury could conclude that, though the concept of following distance might apply only to a vehicle in the same lane, a reasonable professional driver would also consider his proximity to vehicles in other lanes, especially in conditions in which those other vehicles might hydroplane and suddenly change lanes.

Plaintiff raises several more bases on which a rational fact finder might find Mr. Clark's driving negligent. Specifically, Plaintiff notes that signage in this section of I-15 directed that trucks pulling loads as large as Mr. Clark's should not drive in the left two lanes. Dkt. No. 57, p. 24. Defendants argue that the signage referred to the HOV Lane and Lane 1, meaning that oversized loads could still use Lane 2, but that is a dispute of fact for the jury to resolve. Dkt. No. 58, p. 6. Plaintiff also notes that Mr. Clark's oversized load permit required him to "stop operations" if there were "any accumulation of snow and ice on the roadway." Dkt. No. 57-1, p. 47. Defendants dispute that the slush present at the time of the collision met the permit's threshold for an accumulation of snow and ice, but that is also a dispute of material fact left to the jury. Dkt. No. 58, p. 11.

2) Causation

Defendants argue that, even if Mr. Clark operated the Peterbilt negligently, Plaintiff fails to demonstrate that Mr. Clark's negligence proximately caused Plaintiff's injury. Dkt. No. 55, p. 15. Defendants suggest that the "the Altima driver's sudden, lateral loss of control was a superseding, independent event that was not reasonably foreseeable" to Mr. Clark. *Id.* at 16. Plaintiff responds that an injury may have multiple proximate causes and that a foreseeable intervening act is not a superseding cause. Dkt. No. 57, p. 26.

Utah law is clear that "there can be more than one proximate cause . . . of an injury." *McCorvey v. Utah State Dep't of Transp.*, 868 P.2d 41, 45 (Utah 1993). "'Generally, the question of proximate cause raises an issue of fact to be submitted to the jury for its determination.'" *Harding v. Atlas Title Ins. Agency, Inc.*, 285 P.3d 1260, 1263 (Utah Ct. App. 2012) (citation omitted). Questions of proximate cause may be decided as a matter of law "'(i) when the facts are so clear that reasonable persons could not disagree about the underlying facts or about the application of a legal standard to the facts, and (ii) when the proximate cause of an injury is left to speculation so that the claim fails as a matter of law.'" *Harding*, 285 P.3d at 1263 (citation omitted). "[I]f there is any doubt about whether something was a proximate cause of the plaintiff's injuries, the court must not decide the issue as a matter of law." *Goebel v. Salt Lake City S. R. Co.*, 104 P.3d 1185, 1190 (Utah 2004).

When multiple proximate causes exist, a tortfeasor may avoid liability by identifying a superseding cause, which is "'an independent event, not reasonably foreseeable, that completely breaks the connection between fault and damages.'" *Wood v. United Parcel Serv., Inc.*, 496 P.3d 139, 143 (Utah 2021) (citation omitted). "The key words in that sentence are 'reasonably foreseeable.'" *Id.* (citation omitted). Utah's Supreme Court uses the Restatement (Second) of Torts' test of foreseeability:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> (b) a reasonable [person] knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

*Id*. (quoting RESTATEMENT (SECOND) OF TORTS § 447). "If any of these conditions are satisfied, then the intervening negligence is not a superseding cause" and the tortfeasor remains liable. *Wood*, 496 P.3d at 143.

Defendants argue that Mr. Pauga's loss of control of the Altima was a superseding cause of the accident and, therefore, of Plaintiff's injury. Dkt. No. 55, pp. 15–16. But a reasonable finder of fact could conclude that Mr. Pauga's hydroplaning, even if it was a result of his own negligence, was foreseeable to Mr. Clark. As Plaintiff notes, Mr. Clark is a professional driver and was trained to anticipate a variety of hazards on public roads. Dkt. No. 57, p. 28. A reasonable jury could conclude: (1) that Mr. Clark should have realized that drivers near him were likely to lose control in wet, slushy conditions; (2) that a reasonable person who knew of the circumstances of the crash would not regard it as highly extraordinary that a driver drove too quickly and hydroplaned in wet, slushy conditions; or (3) that a collision with a hydroplaning car was a normal consequence of Mr. Clark's negligent driving and that Mr. Pauga's driving was not extraordinarily negligent.

Plaintiff cites *Dee v. Johnson*, 286 P.3d 22 (Utah Ct. App. 2012) to support the argument that Mr. Pauga's loss of control was not a superseding cause. In *Dee*, Johnson lost control on icy

roads, causing his car to slide into the median. *Dee*, 286 P.3d at 22. Johnson called the Utah Highway Patrol, and the Patrol called a tow truck. *Id*. That tow truck pulled Johnson's car onto the highway, partially blocking one lane, at which point Dee's vehicle hit the tow truck. *Id*. at 22–23. The Utah Court of Appeals concluded that "the legal separation between Johnson's driving on the slick highway and Dee's injury is too great to satisfy the requirements of proximate cause," and the mechanism of harm could not have been foreseen. *Id*. at 24. The court emphasized that, "at the conclusion of Johnson's negligent act, his vehicle came to rest safely in the median." *Id*. As Plaintiff notes, Mr. Pauga's Altima had not come to rest in the median, or in any safe place, before the collision occurred. Moreover, Plaintiff's claim is against Mr. Clark, not Mr. Pauga, so the logic of *Dee* has limited application in this case.

In their reply, Defendants introduce the argument that Mr. Clark could not have avoided the collision with the Altima even if he had taken the precautions the Plaintiff faults him for neglecting. Dkt. No. 58, pp. 12–13. Leaving aside the procedural propriety of raising this new argument in a reply rather than the motion for summary judgment itself, the court is not persuaded. A rational fact-finder could conclude that Mr. Clark might have avoided the collision if he had reduced his speed to two-thirds of the limit; increased his distance from the Altima and other traffic; driven in a different lane; or stopped driving when the slush began to accumulate. Defendant's motion for summary judgment is therefore denied with respect to Plaintiff's first negligence claim.

## III. NEGLIGENT SUPERVISION

Plaintiff alleges that Valley Transportation Service owed Plaintiff a duty to use reasonable care in hiring, retaining, training, and supervising qualified and suitable drivers, and that Valley Transportation Service breached that duty. Dkt. No. 1-1, p. 5. As Plaintiff notes, Defendants'

motion for summary judgment "does not address Plaintiff's Second Cause of Action." Dkt. No. 57, p. 30. Nonetheless, Defendants reply that Plaintiff has not identified "any specific training, supervision, or hiring deficiency that caused" the accident. Dkt. No. 58, p. 14. Having failed to address this cause of action in their motion, it is unclear that Defendants may argue this issue in their reply, much less shift the burden to Plaintiff to rebut an argument they never offered.

Even if the issue were properly raised, the court finds that Plaintiff has identified genuine disputes as to material facts. Plaintiff's response reiterates the allegation that Valley Transportation Service failed to enforce its written policies and cites expert testimony by Mr. Herbert that this failure enabled Mr. Clark's allegedly negligent driving. Dkt. No. 58, p. 15. Mr. Herbert testified that dashboard cameras, which Mr. Clark did not have, are a "very common tool" in the truck industry for "monitoring[ing] the manner in which drivers are operating vehicles," and that these cameras may have "realtime reporting capabilities." Dkt. No. 55-10, p. 52. Mr. Herbert also opined that Valley Transportation did not provide effective training to help Mr. Clark adjust his speed to the prevailing conditions, comply with his oversize load permit, and maintain awareness of his surroundings. *Id*. at 53.

Defendants insist that "Plaintiff offers no admissible evidence of an enforceable policy violation by Mr. Clark causally linked to the sub-second encroachment event, and no competent analysis that any different company action would have prevented this collision," but Plaintiffs have offered expert testimony that Mr. Clark's driving violated Valley Transportation Service's policies and that Valley Transportation Service failed to enforce those policies. Dkt. No. 58, p. 14; Dkt. No. 55-10, pp. 52–53. Though Defendants clearly disagree with Mr. Herbert, that dispute must be resolved by a fact-finder, not by a motion for summary judgment.

**CONCLUSION AND ORDER**

For the reasons above, the court DENIES Defendant's motion for summary judgment.

DATED October 30, 2026.

BY THE COURT

Jill N. Parrish
Chief United States District Judge
District of Utah